# THE AMERICAN BIBLE SOCIETY et al.

## v.

## MARY PRICE.

*Filed at Mt. Vernon January 27, 1886.*

1. TESTAMENTARY CAPACITY—*of the various elements affecting that question.* Although a person may have sufficient mental capacity to attend to the ordinary business affairs of life, yet if he is insane with regard to subjects connected with the testamentary disposition of his property and the objects of his bounty, while influenced and controlled by such insanity, to such an extent as to be unable rationally to comprehend the nature and effect of the provisions of his will, he will be incapable of making a valid will.

2. An understanding, however, of the nature of the business in respect of which the testator is about making a will, of the kind and value of the property devised, and the persons who are the natural objects of his bounty, and of the manner in which he wishes to dispose of his property, are evidences of testamentary capacity.

3. But where there is an insane delusion in regard to one who is a natural object of the testator's bounty, which causes him to make a will he would not have made but for such delusion, the will can not be sustained; or where there is an insane delusion in regard to the duty or moral obligation of the testator to make a will in favor of a particular corporation or society, a will made as the result of such delusion can not be sustained.

4. Eccentricities or peculiarities, or radical or extreme notions or opinions upon religion, colleges, education, or masonry and secret societies, will not necessarily render a man incapable of making a will, but they may. It is therefore no error to modify an instruction that such things will not incapacitate a person, by making it read they will not *necessarily* incapacitate.

5. SAME—*opinions of persons not experts.* The opinions of witnesses not experts, as to the sanity of a testator at the time of making his will, after first stating their observations upon which they are based, are competent evidence in a contest of a will.

6. PLEADING AND EVIDENCE—*sufficiency of bill to contest a will to permit proof in respect to testamentary capacity.* A bill to set aside a will which alleges that the testator had become and was, at the time of the making of the will, of unsound mind and memory, is sufficient to question the maker's testamentary capacity. The specific name applicable to describe the unsoundness of mind and the means which caused the same, or how it came about that such unsound mind and memory caused the writing to be so drawn and signed, are matters of evidence, and need not be alleged, or proven, if alleged.

115  623
121  384
121  568
115  623
29a  601
115  623
430  479
115  623
143   69
143  299
145  271
40a  391
115  623
148   47
115  623
160  340
50a   89
115  623
158  316
115  623
171   27
171   35
115  623
174  199
115  623
176  451
115  623
180  305
115     623
d190  8292
115     623
193  11  88
115    623
d203  11215
115     623
211   5377
115    623
113a  5271
115    623
115a  8588

7.   Under a bill charging that a testator, at the time of making a writing as and for his will, was of unsound mind and memory, evidence is admissible to show a want of testamentary capacity, from an insane delusion in respect to a child or object of his bounty; and when such evidence is admitted without objection, an instruction based upon it is not erroneous.

8.   PARTIES—*contest of will—remote devisee having a contingent interest.* The owner of an estate of $100,000, by his will gave his wife a life estate in the home place, and some personal property, and directed his executors to sell the whole of his estate and the property given his wife, at her death, and convert the same into money.   He devised $2000 to his executors in trust, to invest the same and pay his daughter the interest or profits during her life, and after her death to pay such interest or profits to her child or children until they became of age, and at their majority, to pay to them the principal sum.   If his daughter should die leaving no issue, the principal was to be added to his other estate, which he devised to two religious societies.   The daughter filed her bill against the executors and others, to contest the validity of the will:   *Held,* that her only child was not a necessary party.

9.   In such case it would be the duty of the trustees, who were made parties, to preserve the interest for whomsoever should ultimately be entitled to the same, and that they represented the owner ultimately entitled to the fund in their hands, and that such owner would be bound by the decree.

10.   SAME—*waiver of objection for want of a necessary party.*   If essential to make a person having a contingent interest in a devise of a sum of money, a party to a bill to contest a will, an objection to the omission to do so comes too late when raised in this court for the first time.

11.   NEW TRIAL—*in chancery—as to finding by a jury in a suit to contest a will.*   A new trial will not be granted in a proceeding in chancery to contest a will, unless the finding of the jury is clearly against the weight of the evidence.   The verdict in such case stands the same as in ordinary cases at law.

12.   AMENDMENT—*of bill in chancery to admit evidence otherwise competent.*   Under the statute (sec. 37, Chancery Code,) the court may allow parties to amend their bills, pleas, answers and replications, on reasonable terms, when the opposite party may not be surprised or unreasonably delayed. Such amendment is even admissible at the hearing to conform the pleadings to the evidence.

13.   INSTRUCTION—*consisting of an argument.*   Where a part of an instruction is more an argument than the statement of any legal principle, it may be properly refused.

14.   SAME—*unnecessary modification not misleading.*   A modification of an instruction by the insertion of additional words therein, which are not calculated to mislead, is not error to reverse.

15.   SAME—*ignoring important element.*   On the contest of a will on the ground of an insane delusion on the part of the testator, an instruction was

asked by the proponents of the will, to the effect that if the maker's brain was not diseased to such an extent as to render him incapable of transacting his ordinary business, he was capable of making the will, and refused: *Held,* no error, as it wholly ignored the question of insane delusion.

16. SAME—*whether based on evidence.* On the contest of a will, by bill in chancery, if there is evidence properly admitted tending to prove that the testator was influenced by insane delusions in respect to the objects of his bounty, or of his duty to a church or religious society, to which he gave the great bulk of his fortune, this will be sufficient upon which to base instructions, upon the hypothesis the evidence proves the existence of such delusions. The weight of the evidence on that question is not material, to justify such instructions.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of St. Clair county; the Hon. GEO. W. WALL, Judge, presiding.

Mr. GEORGE P. STRONG, for the plaintiffs in error:

A man capable of buying and selling property, renting land, settling accounts and attending to the ordinary affairs of life, and understanding the business in which he is engaged, must be regarded as capable of making a valid disposition of his property by will. *Meeker* v. *Meeker,* 75 Ill. 260; *Brown* v. *Riggin,* 94 id. 560; *Carpenter* v. *Calvert,* 83 id. 70; *Rutherford* v. *Morris,* 77 id. 403; *Stackhouse* v. *Horton,* 15 N. J. 202; *Potts* v. *House,* 6 Ga. 324; *Stewart* v. *Lespenard,* 26 Wend. 255; *Yoe* v. *McCord,* 74 Ill. 45; *McClintock* v. *McCord,* 32 Mo. 419; *Stevens* v. *Van Cleve,* 4 Washb. C. C. 266; *Snow* v. *Benton,* 28 Ill. 306.

A delusion which will destroy the capacity to make a valid will must be a false conception fixed in the mind pertaining to the disposition of his property, influencing the mind of the testator at the time the will is made, inducing him to make such a will as he would not have made but for the delusion. Redf. Am. Cases, 99, citing *Dunham's Appeal,* 27 Conn. 192.

The opinions of non-professional witnesses, other than those attesting the will, are incompetent as testimony, unless founded on facts and circumstances detailed in evidence by

40—115 ILL.

them.    *Carpenter* v. *Calvert,* 83 Ill. 69 ; Redf. Am. Cases on Wills, 105, and cases cited; *Clapp* v. *Fullerton,* 34 N. Y. 190 ; *Stackhouse* v. *Horton,* 15 N. J. 202 ; *Harrison* v. *Rowan,* 3 Washb. C. C. 580 ; Redf. Am. Cases, 68, 112 ; *Dunham's Appeal,* 27 Conn. 192.

When a layman is examined as to facts within his own knowledge tending to show the state of the testator's mind, he may characterize as rational or irrational the acts or declarations to which he testifies.    But to render his opinion admissible, even to this extent, he must be limited to his conclusions from the specific facts he discloses.    *Clapp* v. *Fullerton,* 34 N. Y. 190 ; Redf. Am. Cases, 105, 110 ; *Stackhouse* v. *Horton,* 15 N. J. 202.

Mere opinions of witnesses are entitled to little or no regard, unless they are supported by good reasons founded on facts. *Harrison* v. *Rowan, supra; Beaubien* v. *Cicotte,* 12 Mich. 459 ; *Brooks* v. *Townshend,* 7 Gill, 10 ; *Gibson* v. *Gibson,* 9 Yerg. 330.

Declarations of the testator made before the execution of the will are only admissible to throw light upon the condition of the testator's mind at the time he executed the will,— hence, only such as were made a reasonable time before or after making the will.    Redf. Am. Cases, 487, citing *Boylan* v. *Meeker,* 4 Dutcher, 472.

Mr. R. A. HALBERT, for the executors of the will :

A man capable of buying and selling property, settling accounts, collecting and paying out money, or borrowing or loaning money, must usually be regarded as capable of making a valid disposition of his property. *Meeker* v. *Meeker,* 75 Ill. 260 ; *Rutherford* v. *Morris,* 77 id. 409 ; *Carpenter* v. *Calvert,* 83 id. 62 ; *Brown* v. *Riggin,* 94 id. 569 ; *Yoe* v. *McCord,* 74 id. 33 ; *Lilly* v. *Waggoner,* 27 id. 395 ; *Trish* v. *Newell,* 62 id. 203 ; *Titcomb* v. *Vantyl,* 84 id. 374 ; *Snow* v. *Benton,* 28 id. 306 ; *Duffield* v. *Morris,* 2 Harr. (Del.) 375 ; *Comstock* v.

*Hadlyme*, 8 Conn. 254; *Kinne* v. *Kinne*, 9 id. 102; *Moore* v. *Moore*, 2 Brad. Surr. 261; *Stackhouse* v. *Horton*, 15 N. J. Eq. 202; *Blakely's Will*, 48 Wis. 294.

Testamentary capacity amounts to nothing more than a knowledge by the testator of what he is about, and how he is disposing of his property, and the purpose so to do it. *Hollinger* v. *Lynn*, 37 N. J. Eq. 229; *Sutton* v. *Sutton*, 5 Harr. 269.

The fact that a testator believes in witchcraft, spiritualism, or in any such notions as clairvoyance, divining and mineral rods, dreams and spiritual influences, are not sufficient to set aside a will rationally made. *Chafin Will case*, 32 Wis. 557; *In re Smith*, 52 id. 543; *Brown* v. *Ward*, 53 Md. 423; 1 Redfield on Wills, *79, note 9; *Addington* v. *Wilson*, 5 Ind. 137.

The abstract opinions of any witness, medical or not, are not of any importance as evidence. It must be brought to the test of the facts upon which it is founded. *Stackhouse* v. *Horton*, 15 N. J. Eq. 202; *Lucas* v. *Parsons*, 27 Ga. 593; *Harris* v. *Betson*, 1 Stew. (28 N. J. Eq.) 219; *Rice* v. *Rice*, 50 Mich. 454.

As to what is undue influence, to avoid a will, see *Rutherford* v. *Morris*, 77 Ill. 398, and cases cited; *Brown* v. *Riggen*, 94 id. 569, and cases cited; *McMahon* v. *Ryan*, 20 Pa. St. 329; *Eckert* v. *Flowry*, 43 id. 46; *Morris* v. *Stokes*, 21 Ga. 552; *Stackhouse* v. *Horton*, 15 N. J. Eq. 202.

To constititue undue influence in the procurement of a will, it must virtually destroy the free agency of the testator,—it must be purposely exerted towards the procurement of an unjust will. *Jackman's Will*, 26 Wis. 104.

When it is sought to set aside a will, notwithstanding the testator's general sanity, on account of an insane delusion in reference to a particular person or matter, the specific ground should be stated in the bill. *Benoist* v. *Mullen*, 58 Ill. 324; *Roe* v. *Taylor*, 45 id. 486; *Bitner* v. *Bitner*, 67 Pa. St. 347;

1 Williams on Executors, 27-30, 41, 42; *Fullick* v. *Alanson*, 3 Hagg. Ecc. 527; *Carmichael* v. *Reed*, 45 Ill. 108. The allegations and proof must agree. *Heath* v. *Hall*, 60 Ill. 345.

Setting aside cases of *dementia*, or loss of mind and intellect, the true test of insanity is mental delusion. *Seaman's Friend Society* v. *Hopper*, 33 N. Y. 619.

The mind, although weakened, is held sound, for the purpose of making a will, until there is a total loss of understanding, or idiocy, or the existence of delusion. *Duffield* v. *Morris*, 2 Harr. (Del.) 375.

His insane delusions or hallucinations must have reference to persons or things,—not to opinion or faith. *Goss* v. *Goss*, 3 Humph. 278; *Bonnard's Will*, 16 Abb. (N. S.) 128.

No matter what the subject of the delusion is, it will not defeat a will unless it controlled and influenced the provisions of the will. *Boyd* v. *Eby*, 8 Watts, 66; *Duffield* v. *Morris*, 2 Harr. (Del.) 575; *Seaman's Friend Society* v. *Hopper*, 33 N. Y. 619; *Rice* v. *Rice*, 50 Mich. 455; *Addington* v. *Wilson*, 5 Ind. 137; *Will of Cole*, 49 Wis. 183; *Roe* v. *Taylor*, 45 Ill. 460.

The evidence must be decisive that the belief amounted to an insane delusion. A belief based upon evidence, however slight, is not delusion. *Stackhouse* v. *Horton*, 15 N. J. Ch. 202; *Clapp* v. *Fullerton*, 34 N. Y. 105; *Chafin's Will case*, 32 Wis. 557.

An error in fact, or a prejudice, or suspicion, is not an insane delusion. *Hall* v. *Hall*, 38 Ala. 131; *Seaman's Friend Society* v. *Hopper*, 33 N. Y. 202; *Boardman* v. *Woodman*, 47 N. H. 120; *Trumbull* v. *Gibbons*, 2 Zabriskie, 117.

Where the occasion for anger or distrust is real, and not a figment of the imagination, if the resentment or distrust is not founded wholly on delusion, a testator may, if he choose, disinherit those who have natural claims upon his bounty. In such case there is no ground for setting aside the will, as it can not be said to be the offspring of delusion. *Hallinger*

v. *Syme,* 37 N. J. Eq. 230; *Dale* v. *Dale,* 36 id. 282; *Trumbull* v. *Gibbins,* 2 Zabriskie, 117; *Wintermuth* v. *Wilson,* 28 N. J. Eq. 437.

All the legatees in the will were necessary parties. *Brown* v. *Riggen,* 94 id. 570.

Messrs. G. & G. A. KOERNER, for the defendant in error, after stating and discussing the evidence as showing general insanity, contended that it was necessary to prove it in this case, as the proof showed the testator was so infatuated on the subject of religion as to affect his mind to such an extent as to obliterate his human affections, and destroy his moral feelings.

It is wholly immaterial from what quarter undue influence comes, which destroys free agency. *Potts* v. *House,* 6 Ga. 924.

The investigation in such case may take the widest range. All that is peculiar in temperament or modes of thought, the idiosyncracies of the man so far as susceptibility is thereby shown, present proper considerations for the jury. *Shailer* v. *Bumpstead,* 99 Mass. 112.

A strong circumstance to show undue influence would be the exclusion, by a testator, of a daughter with whom he had no difficulty, and was in need of his aid. *Reynolds* v. *Root,* 62 Barb. 250.

An influence may often be maintained through practicing on the religion or fear of a party. *Norton* v. *Rally,* 2 Eden, 286.

The unnatural character of a will is always to be considered to show either incapability or undue influence; yet, of itself, it is probably never sufficient. *Kevil* v. *Kevil,* 2 Bush, 614.

All men having an opportunity of knowing the testator were competent to give their opinion, the same as experts, upon the state of mind of the deceased. Jarman on Wills, chap. 3, p. 115; *Rutherford* v. *Morris,* 77 Ill. 403; *Meeker* v. *Meeker,* 75 id. 268; *Roe* v. *Taylor,* 45 id. 385; *Buchanan* v. *McLenan,* 105 id. 59.

As to partial insanity, reference is made to Maudsley's work, 115; 1 Redfield on Wills; 68, 69, 71, 72.

As to insane delusions and their effect, see Taylor's Med. Jur. 626; *Goss* v. *Goss*, 3 Humph. 278.

The legal title to the money bequeathed being in the executors, as trustees, it was sufficient to make them parties. 109 U. S. 32.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Mary Price exhibited her bill in equity in the circuit court of St. Clair county, to contest an instrument in writing, probated in the county court of that county on the 4th day of November, A. D. 1878, as the last will and testament of Isaac Foreman, who died on the 28th day of October, A. D. 1878. She charged in her bill that "the said Isaac Foreman, at the time when said pretended will is supposed to have been signed by him, was of a very advanced age, and that his mind had become greatly impaired by age, and that he had become, and was at that time, and had remained to the time of his death, of unsound mind and memory; that owing to his impaired mind, and also to his highly excited feelings in all matters belonging to religious subjects, he was very liable to be unduly influenced by others, and that his mind had been, when yet not entirely impaired, purposely directed and unduly influenced, by designing persons, to make such a disposition of his property as he actually did in this instrument, so that although his mind had become so impaired as to incapacitate him to make a will, this idea of making these bequests to wealthy corporations and leaving his nearest kin unprovided for, remained fixed in his mind." Answer was filed denying these allegations, and insisting that the instrument was the last will and testament of Isaac Foreman, deceased, and that it was valid, and in full force and effect. Replication was filed to the answer, and thereupon an issue at law was made

up by the court whether the writing produced was the last
will and testament of Isaac Foreman, deceased; and this
issue being submitted to a jury, they returned their verdict
that the writing produced was not the last will and testament
of Isaac Foreman, deceased.　Motion, in writing, was made
by the proponents of the will to set aside the verdict and
grant a new trial, but this motion was overruled by the court,
and decree was then rendered in conformity with the verdict.
The case comes before us on writ of error prosecuted by the
proponents of the will.

Isaac Foreman, at the time of his death, was seventy-four
years of age, the owner of a thousand or more acres of valu-
able land in St. Clair county, and he was also possessed of
government bonds and money amounting to something near
$40,000.　He left a widow (Rebecca) who renounced the pro-
visions of the will, and an only child, the contestant, who
was a married woman, and comparatively, if not entirely,
destitute of property.　By the terms of the instrument con-
tested, the testator devised to his wife the homestead occupied
by him at the time of his death, consisting of a half section
of land, with the exception of one forty-acre tract, which had
been laid off into town lots, during her natural life, his house-
hold and kitchen furniture, the stock on the farm, and farm-
ing utensils.　He directed that his executors sell the whole
of his estate, real and personal, not devised to his wife, and
the tract of land devised to his wife, after her death, and
convert the same into money.　He devised $2000 to his ex-
ecutors, in trust, to safely loan or invest the same, and pay
to the contestant the interest or profits thereof, annually, dur-
ing her life, and directed that after her death they pay such
interest or profits thereof, annually, for the maintenance and
education of her child or children, until he, she or they be-
came of age, and then that they pay the principal sum to him,
her or them.　In the event the contestant should die leaving
no child or children surviving her, he devised the said sum as

he did the balance of his estate.   He devised the whole of the
balance of his estate, two-thirds to the American Bible So-
ciety, and one-third to the Missionary Society of the Methodist
Episcopal church.   Numerous witnesses were examined by
the respective parties, on the trial, touching the sanity of the
testator at the time of the execution of the will.

The court, on behalf of the contestant, instructed the jury
as follows:

"If the jury believe, from the evidence, that although Isaac
Foreman had sufficient capacity to attend to the ordinary
business affairs of life, yet that with regard to subjects con-
nected with the testamentary disposition and distribution of
his property and the natural objects of his bounty he was
insane, and that while laboring under such insanity he made
the will in question, and that in making it he was so far
influenced or controlled by such insanity as to be unable
rationally to comprehend the nature and effect of the provi-
sions of the will, and was thereby led to make the will as he
did, then the jury must find the will not to be the will of
the said Isaac Foreman.

"An insane delusion is a fixed and settled belief in facts not
existing, which no rational person would believe.   Such de-
lusion may sometimes exist as to one or more subjects.   And
if the jury believe, from the evidence in this case, that Isaac
Foreman was laboring under such insane delusions upon sub-
jects connected with the testamentary disposition of his prop-
erty and the natural objects of his bounty when he made the
will in question, and was thereby rendered incompetent to
comprehend, rationally, the nature and effect of the act, and
that but for such delusions he would not have made the will
as he did, then the jury should find against the validity of
the will."

And the court, at the instance of the proponents, further
instructed the jury as follows:

"1.    The court instructs the jury, that if they believe, from the evidence, that Isaac Foreman, at the time he signed the paper in dispute, had mind and memory sufficient to transact his ordinary business, and that when he made the will he knew and understood the business he was engaged in, then the jury should find said paper writing to be the will of said Foreman.

"2.    The court instructs the jury, that the owner of property who has capacity to attend to his ordinary business, has the lawful right to dispose of it, either by deed or by will, as he may choose, and it requires no greater mental capacity to make a valid will than to make a valid deed.    And if such an owner chooses to disinherit his heir, or leave his property to some charitable object, he has a legal right to do so, and such disposition of his property is valid, whether it be reasonable or unreasonable, just or unjust; and the reasonableness, or justice, or propriety of the will are not questions for the jury to pass upon.    If, therefore, the jury believe, from the evidence, that when he executed the paper in dispute, Isaac Foreman had capacity enough to attend to his ordinary business, and to know and understand the business he was engaged in, then he had the right and the capacity to make such a will, and the jury should find the paper in dispute to be the will of said Foreman.    The court instructs the jury that even if they find, from the evidence, that Isaac Foreman had, during some portions of his life, eccentricities or peculiarities, or even an insane delusion, or partial insanity on the subjects of religion, or masonry, or education, or any other subject, yet if they find, from the evidence, that at the time he made the will in question he had sufficient mind and memory to understand his ordinary business, and that he knew and understood the business he was engaged in, and intended to make such a will, the jury should find said will to be the will of said Isaac Foreman."

The proponents then asked the court to still further instruct the jury as follows, omitting the words in italics; but the court modified the instruction by adding the words in italics, and in this form gave it to the jury:

"7. The court instructs the jury, that eccentricities, or peculiarities, or radical or extreme notions or opinions upon religion, colleges, education, or masonry and secret societies, will not *necessarily* render a man incapable of making a will; and if the jury find that in making the will in dispute, Isaac Foreman had sufficient mind and memory to understand the business he was engaged in when he made the will, then the jury should find in favor of said will, though said Foreman may have had eccentricities and peculiarities, or extreme notions and opinions upon religion, colleges, education, or masonry or secret societies.

"4. The court instructs the jury, that in order to make a valid will it is only necessary that a man shall have mental capacity sufficient for the transaction of the ordinary affairs of life, and possessing this, though he may be feeble in mind and body from sickness or old age, he has the legal right to dispose of his property just as he pleases, without consulting either his family or his acquaintances. And if the jury believe, from the evidence, that when he executed the paper in dispute, Isaac Foreman knew what he was doing, and executed it as his will, *understanding its nature and effect,* and that at the time he had sufficient mind and memory to transact his ordinary business, such as buying or selling or renting property, or collecting or paying out money or settling accounts, then the jury should find the paper in dispute to be the last will and testament of said Isaac Foreman."

The proponents also further asked the court to instruct the jury as follows:

"The court instructs the jury, that insanity is a disease of the brain, affecting the mind to such an extent as to destroy

a man's capacity to attend to his ordinary business, or to know and understand the business he was engaged in when making a will. And unless the jury find, from the evidence, that Mr. Foreman's brain was diseased to such an extent that he did not have mind and memory sufficient to enable him to transact his ordinary business, such as renting his land, settling accounts, buying and selling property, and to know and understand the business he was engaged in at the time he made the will in dispute, the jury should find that said will is the will of said Foreman."

Proper exceptions were taken by the proponents, at the time, to the giving of the contestant's instructions, to the modifying of the instructions as above, and the refusal to give this last instruction, and errors are thereupon assigned, bringing these rulings before us for review.

The instructions given at the instance of the proponents are claimed to be erroneous, because insane delusion, in respect of the contestant, is not specifically charged in the bill. It is contended that the jury are directed by these instructions to find a verdict upon an issue not made by the bill and answer. The bill, it has been seen, charges that the testator had become, and was at the time of the making of the will, of unsound mind and memory, thus, in effect, simply putting in issue his testamentary capacity, which, by our statute, is defined to be that of being of a prescribed age, and "of sound mind and memory." The only material question, manifestly, under this allegation, was whether the writing produced was the product of an unsound mind and memory. The specific name applied to describe that unsoundness, the means whereby the unsoundness was caused, or how it came about that the unsound mind and memory caused this writing to be drawn and signed, were matters of evidence that need not be alleged, and, if alleged, need not be proved. In any view, if allegations in these respects misled the proponents of the will, they should, when evidence of unsoundness of mind not alleged

was offered, have made that specific objection, so that the court could, if necessary, have allowed the requisite amendments, and have given such extensions of time as were necessary to allow all parties ample opportunity to meet the issues. By section 37 of our Chancery act, (1 Starr & Curtiss' Stat. p. 409,) the court may permit parties to amend their bills, pleas, answers and replications, on such terms as the court may deem proper, so that neither party be surprised or unreasonably delayed thereby; and no amendment shall be cause for a continuance, unless the party to be affected thereby, or his agent or attorney, shall make affidavit that in consequence thereof he is unprepared to proceed with the trial of the cause, etc. And so it has been held that amendment is admissible at the hearing to conform the pleadings to the evidence and avoid a variance. *Moshier* v. *Knox College,* 32 Ill. 155; *Farwell* v. *Meyer,* 35 id. 40. See, also, *Erickson* v. *Rafferty,* 79 Ill. 209; *Downey* v. *O'Donnell,* 92 id. 559. We perceive no error in the principles of law enunciated in the instructions.

In *Roe et al.* v. *Taylor,* 45 Ill. 490, in considering instructions then before the court, it was said: "An understanding of the nature of the business about which the testator was engaged, of the kind and value of the property devised, and of the persons who were the natural objects of his bounty, and of the manner in which he wished to dispose of his property,—all these are evidences of testamentary capacity, unless, as the court very properly said, the testator was affected with some morbid or insane delusion as to some one of those natural objects of his bounty,"—thus, conclusively, by implication, saying that if the testator was affected with a morbid or insane delusion as to one of those natural objects of his bounty, it would affect and destroy his testamentary capacity. And in *Meeker* v. *Meeker,* 75 Ill. 266, it was said: "The derangement or imbecility, to incapacitate the person from making a valid will, must be of that character which

renders him incapable of understanding the effect and conse-
quence of his acts.   It need not be that total derangement or
aberration of the mental faculties which prevents the party
from reasoning correctly on all subjects, nor yet, at all times,
the power, upon correct premises, to arrive at a correct con-
clusion; but it is that want of capacity which prevents a
person from reasoning correctly, and from understanding the
relation of cause and effect in ordinary business affairs."
*Carpenter* v. *Calvert*, 83 Ill. 62, and *Brown* v. *Riggin*, 94 id.
568, follow this ruling.

But it is to be observed this is directed to the question of
insanity and testamentary capacity, as a general question.
Obviously, if there be morbid or insane delusion in the mind
of the testator as to one of the natural objects of his bounty,
its effect upon his capacity to reason in regard to that object
of his bounty could in nowise be measured by his capacity
to reason upon subjects unaffected by that delusion.   It was
not intended . to decide that no testator's sanity could be
questioned upon the ground of delusion, nor was it intended
to decide that monomania is not recognized as a species of
insanity affecting legal responsibility.   It was said, on the
authority of Jarman on Wills, in *Trish et al.* v. *Newell et al.*
62 Ill. 205, that the question in cases of this kind is: "Were
his mind and memory sufficiently sound to enable him to
know and understand the business in which he was engaged
at the time he executed the will," and "that in determining
the question, the competency of the mind should be judged of
by the nature of the act to be done, from a consideration of
all the circumstances of the case."   This, also, by implica-
tion, very clearly excludes from the list of those competent to
make a will those laboring under insane delusion and mono-
mania, for in case of either, in respect of the natural objects
of the testator's bounty, he can not know and understand the
business in which he is engaged.   In *Searle* v. *Galbraith*, 73
Ill. 272, we recognized that there may be insanity without

the general business capacity of the individual being affected thereby.   And we have held, in criminal cases, the defence of insanity is sufficient where it is shown that, as to the alleged criminal act, the defendant did not know right from wrong. *Hopps* v. *The People,* 31 Ill. 391.

Beyond all question it is within the previous rulings of this court, and abundantly sustained by the rulings of other courts of the highest respectability, that where there is insane delusion in regard to one who is an object of the testator's bounty, which causes him to make a will which he would not have made but for that delusion, such will can not be sustained; and so, also, where there is insane delusion in regard to the duty or moral obligation of a party to make a will in favor of a particular individual, corporation or society, and a will is made as the result of that insane delusion, it can not be sustained.   1 Redfield on Wills, (3d ed.) 72, 74, *et seq.* and notes; 1 Jarman on Wills, (5th ed.) 38, *et seq.* and notes; Buswell on Insanity, secs. 13, 381.

We are unable to perceive any substantial error in the modification of the instructions asked by the proponents. The word "necessarily," in the seventh instruction, simply precludes the idea that in no case could the circumstances recited be evidence of insanity.   They are not necessarily insane acts, but they may be.   The whole of this part of the instruction is more an argument than the statement of any legal principle, and it might very properly have been stricken out on that ground.   The words, "understanding its nature and effect," in the fourth instruction, while they may not have been necessary, certainly could not mislead.   If the testator did not have mind enough to understand the nature and effect of the instrument purporting to be his will, it certainly could not be his will.   The instruction refused omits the idea of delusion entirely, and all that it contains that could be of advantage to the proponents is embodied in other instructions that were given.

Again, the point is urged that there is no evidence on which to predicate the instructions given on behalf of the contestant. We think differently. There is evidence of delusion, both in respect to the contestant and the duty or obligation of the testator to give his property to the societies named in this instrument. On this point the weight of that evidence is not material. If there was evidence to go to the jury for their consideration in respect of these delusions, then it was proper to instruct them as to the law, on the hypothesis that they found that the evidence proved what, in the opinion of the court, it tended to prove. Houser testified that in talking in class meeting about his children and his family,—and this included the contestant,—he said he was afraid of his life. There is no pretence, in the evidence given to the jury, that there was any foundation in fact for this fear. The evidence rebuts the idea that he was at any time in danger of violence from any of his children or any member of his family. Boynton testified that in speaking of his intention in regard to the making of his will, and the contestant, he said his child was well provided for. The proof shows that she was destitute of property, or nearly so. William Begole testified that the testator told him, time and again, that he was harassed with agents for churches, orphan asylums, colleges, schools, and bible and missionary societies, for money,—that they harassed him all the time. Bowler testified that the testator told him that he had been greatly harassed and disturbed, and his mind injured, by solicitations to give money to religious institutions, and for benevolent purposes,—that the inducements held out to him to make such gifts were, "that his future happiness depended upon his liberality." Martha J. Holliday testified that "he said he intended to place his money where it would roll up, and roll up, and roll up, until the day of judgment, to work for old Isaac Foreman." There is other evidence of like tendency, but this, we think, is sufficient to show that there was evidence before the jury

upon which to predicate the instructions. That there was other evidence tending to rebut this, is unimportant. Its effect was fairly a question for the jury.

But it is contended, waiving the preceding objections, the verdict was clearly contrary to the evidence, and it should therefore be set aside. The rule is, on questions of this kind, the finding of the jury is conclusive, unless clearly against the weight of the evidence, (*Brownfield* v. *Brownfield*, 43 Ill. 147, *Meeker* v. *Meeker, supra, Carpenter* v. *Calvert, supra,*) and in this respect they are put upon the same footing with cases at law. *Long et al.* v. *Long et al.* 107 Ill. 210.

There are some circumstances, as to which there is no controversy, strongly against the proponents of the will. The testator had two other daughters who reached womanhood, but who died before this will was executed; but the contestant was his favorite, and the only child alive at that time. Several of the witnesses testify to the affectionate and dutiful conduct of the contestant towards the testator. Among others, Little says she was a dutiful daughter,—always took her father's part in all the trouble they had about the house, which was frequent; that the house was divided,—the old lady and the two younger daughters against Mary, (the contestant,) "and her father," and that the testator frequently said to witness that it would be impossible for him to live at home if it was not for her. The testator was a man of ample means, as has been seen, his property amounting, in the aggregate, to at least $100,000. It was chiefly productive property, consisting in great part in farming lands, yielding rent, and in interest bearing government bonds. In addition to this there was an income to the family, of which he seems to have had control, from several hundred acres of farming lands belonging to his wife. Notwithstanding all this, the testator neglected to give this favorite child even an average common school education, clad her, at best, very commonly, and it may be, as some of the witnesses say, meanly; re-

strained her from the enjoyment of society adapted to her age and proper position in life, and exacted of her heavy menial labor,—sometimes that of a field hand. She married, finally, a man whom the testator disliked, it is true, very much, but that does not seem to have prevented him from exacting of her, nor her from performing, the same heavy menial labor after her marriage as before. The evidence shows that the greater part of the time after the contestant's marriage, and until the testator's death, she remained with him, doing house work, milking cows, and sometimes hoeing potatoes, helping to load wheat, hay, etc. The testator was informed by his lawyers that he could, through trustees, settle his property upon his child in such way that her husband could not spend or control it. It is claimed that he relied upon his wife, who had an estate of some $30,000 in value, in her own right, to provide for the contestant; and the witness who drew the will testified that he said that if the contestant conducted herself properly, her mother would provide well for her. But her mother had not then done so, and he could not know that she would do so. If a sane mind conceived that it was desirable to put his property where it would roll up until the day of judgment, to work for him, why would it not also conceive that it was equally desirable to put her property where it would roll up until the day of judgment, to work for her? We find it difficult to believe that an egotism which is so extravagant and distorted that it regards only self in this life and in the life to come, that wholly disregards and ignores the natural claims of a needy child, known to be worthy, and dutiful, and loving, and the affections ordinarily implanted in the heart for such a child, can consist with a mind entirely free of disease causing morbid delusion.

There was evidence of delusions in other respects than those to which we have referred, that we regard as competent as tending, in some degree, to prove permanent mental impairment, though much of it, we concede, very slightly, and

41—115 ILL.

if considered alone it would be of but little value.    The evidence of delusions and of unusual conduct at different periods throughout the testator's life, tends to show that they were the result of permanent derangement, rather than of ignorance and the want of reflection, and it was therefore properly admitted.    There was also evidence that the testator was much of his time worrying and fretting in regard to matters about which he was under delusion.

It was competent to admit in evidence the opinions of witnesses who were not experts, touching the testator's sanity, first stating their observations on which their opinions were based.    (*Roe* v. *Taylor,* 45 Ill. 485 ;   *Upstone* v. *The People,* 109 id. 175.)    A number of such witnesses were examined on each side, but there is this difference in favor of the contestant :  most of the neighbors of the testator—those who had known him longest and most intimately—testified that they believed him to have been insane at the time the will was executed.    With but a few execptions, those who testified that they believed the testator to have been sane at the time he executed the will, were persons seeing him but occasionally, and having but casual business transactions with him.    We concede that the observations of the witnesses stated as the basis of their belief that the testator was insane, are, in very many instances, inconclusive and unsatisfactory, and in even more instances the witnesses simply say that he acted "funny," or "queer," or "strange," without the ability to recall, or, at all events, to describe, the acts thus characterized.    Much reliance, of course, can not be, and we assume was not, at the trial, placed on this evidence ; still, there is this to be borne in mind,—the conclusion drawn from observation by illiterate persons unaccustomed to describe what they see, when relating to a matter of which they are competent to judge, is usually more accurate than their description of that from which their conclusions are drawn.    Often all persons see and know certain persons, animals or things to be different

from each other, without pausing to note and fix in the memory the entire extent of the difference, and so arrange it in the mind that they can describe it to others with such accuracy as to make them see it with the same distinctness that they did themselves. With illiterate or untrained minds this inability is made greater by a want of, or an incapacity to accurately use, the appropriate words. And the novelty of the position of a witness not infrequently embarrasses persons in recalling and in using descriptive language with that readiness and accuracy they would under different circumstances.

Experts gave their opinions on both sides—one that the testator was sane, the other that he was insane. The family physician of the testator, without professing to be an expert, added his opinion to those of the neighbors who believed that the testator was insane, limiting it to matters of religion and matters in which the testator's loves and hates were involved.

We have not recapitulated the evidence, of which there is a great deal, in favor of the proponents of the will. A clear preponderance of the evidence shows that the testator's general business capacity was equal, if not superior, to the average of mankind. He was, all his life, the owner of what may be considered a large property,—not requiring, perhaps, extraordinary ability, but yet good judgment, prudence and diligence for its successful management. And this property was not only preserved, but the amount was gradually augmented by him. No one, during his life, thought it necessary to take steps to have a conservator appointed. The validity of no business transaction of his during his life was ever questioned on the ground of his insanity, and some persons of excellent judgment, with fair opportunities of knowing the condition of the testator's mind, and of undoubted integrity, have given their opinion that the testator was sane throughout life. This business capacity, however, may co-exist with the delusion here charged. It may be that a mind, as to one subject or one individual, is, by reason of delusion, incapable

of reasoning and judging, while as to most, or indeed all, other subjects or persons there is no delusion, and it is hence capable of reasoning and judging.

We have not deemed it necessary to reproduce every circumstance detailed in the evidence, tending to sustain the verdict below. We have simply referred to what we deemed essential to show that there was evidence sustaining the verdict, and that the question of the testator's sanity or insanity was, under the evidence, so clearly within the province of the jury to determine, that their determination ought not to be set aside. We may not be so entirely convinced as to be free of misgiving or doubt, that the writing produced is not the will of Isaac Foreman, but, on the other hand, we can not say we are clearly satisfied that the finding of the jury is not sustained by the evidence.

An objection is pressed, with some earnestness, that Ida Price, a daughter, and now the only child of the contestant, is not made a defendant. The objection has two answers:

*First*—Ida Price has no present interest in any property affected by this litigation. The will, we have seen, directs that the proceeds arising from the loan or investment of $2000 shall be paid to the contestant during her lifetime; that upon her death, if she shall leave a child or children surviving her, the same shall be paid to him, her or them, until the age of majority is reached, when the $2000 shall be paid also. Until the death, therefore, of the contestant, it can not be known with absolute certainty who, if any, shall be her surviving child or children. Ida Price, we concede, has a contingent future interest in the devise, but no present interest. The title is in the trustees, and the duty is imposed upon them to protect and preserve this interest for whomsoever shall be ultimately entitled to it. They are parties to the suit, and they stand for and represent, in this litigation, the ownership ultimately entitled to this fund, and such ownership is bound by their representation. Story's Equity

Pleadings, secs. 140, 141, 145, 150; *Hopkirk* v. *Page*, 2 Brock. 42; *American Bible Society* v. *Price*, 110 Ill. 61.

*Second*—The existence of Ida Price is not brought to the attention of the court by any pleading or motion made in the court below. Such a person appears and testifies as a witness on the trial, and thus alone discloses her existence and relationship to the contestant, and thereby her future contingent interest in the $2000, the proceeds of which are devised to the contestant.

In the written motion for a new trial it is not urged that Ida Price should have been a party. If it were essential to make her a party, the objection ought to have been made in the court below. Since neither the pleadings, the decree nor the motion for a new trial show any ground for the objection, even if tenable if made in apt time, it is now too late. It can not be raised for the first time in this court.

The decree is affirmed.

*Decree affirmed.*

Mr. JUSTICE SHELDON: The testator had his eccentricities of character, but taking the whole evidence together, it shows most clearly, in my judgment, that he had full testamentary capacity.

This case, when first considered, was assigned to the late Mr. Justice DICKEY to prepare the opinion, but no opinion having been prepared in his lifetime, the case was re-assigned at the November term, 1885.