(No. 23148.—

ANNA HOLSZ *et al.* Appellants, *vs.* HATTIE A. STEPHEN, Appellee.

*Opinion filed February 14, 1936.*

528

KAHN & KAHN, and WALTER MONARCH, (HARRY A. KAHN, IRVING K. RUSS, and EMANUEL A. RISSMAN, of counsel,) for appellants.

ARCH F. NUTTALL, for appellee.

Mr. JUSTICE JONES delivered the opinion of the court:

The circuit court of Cook county dismissed, for want of equity, a bill of complaint by Anna Holsz and a cross-bill by her son, George Holsz, against Hattie A. Stephen, individually and as executrix, and as sole legatee and devisee, under the last will of Frank Kelly, deceased. An appeal to this court was taken by the complainant and the cross-complainant.

Anna Holsz was a widow. Her son, George, was unmarried. The basis of the bill and cross-bill is an alleged contract whereby Kelly agreed to devise and bequeath to

Anna Holsz all of his property except his dwelling, which he was to leave to her son, George, in return for their promise to remain single and take care of him for the remainder of his life. Kelly and his wife were invalids and Anna Holsz was employed by them from 1917 to 1923 to do light housework for five hours a day on week days at fifteen cents an hour. From 1923 until Mrs. Kelly's death in 1926, she received twenty-five cents an hour for her work. After that she was paid fifteen dollars a week until the following August. Then Kelly's niece came and Mrs. Holsz was paid by the hour until January 18, 1927, when Kelly was taken to a hospital. From the hospital he went to the home of Mrs. Holsz where he remained until January 11, 1932, a period of about five years. On the last mentioned date, he and Mrs. Holsz moved to a dwelling which he owned. It had become vacant and he was afraid it would be wrecked by other people. She stayed there one month and then moved back to her own home. Appellee was procured to stay with him after that. Mrs. Holsz visited him about twice a week until his death on September 5, 1932.

On December 13, 1930, Kelly executed a will, leaving his dwelling to cross-complainant, George Holsz, and the remainder of his estate to complainant, Anna Holsz. On August 5, 1932, he executed another instrument purporting to be his last will naming appellee, Hattie A. Stephen, as executrix and as sole legatee and devisee. After its probate, complainant filed a bill to set it aside, which proceeding was pending at the time this suit was instituted.

It is stipulated in this case that the value of the property claimed by complainant is $9000 subject to the real estate taxes, and that the value of the property claimed by cross-complainant is $3000. Complainant and cross-complainant each filed a claim against decedent's estate in the probate court. The claim of complainant is for $25,000. That of George Holsz is for $3000.

Kelly was about eighty-five years old when he died, was over six feet in height and weighed about 250 pounds. He had several physical ailments and required much assistance and attention. No question is raised as to the services rendered by Mrs. Holsz and it is conceded that she took care of him. He paid her twenty-five dollars a week from the time he left the hospital, and there is testimony tending to show her services were reasonably worth seventy-five to eighty dollars a week.

Henry Holsz, a brother of cross-complainant, testified he had a conversation with decedent at the hospital on January 22, 1927, and another at his mother's home on January 25, 1927, in which decedent said he would pay complainant twenty-five dollars a week and in addition would give her his property (except the dwelling) consisting of a building and of money in the First State Bank of Steger, if she would take care of him as long as he lived; that he wanted complainant to marry him but as long as she did not wish to get married, he wanted her to take care of him and not take anybody else in; that decedent said he was going to leave the dwelling to George because George was so good to him and his wife; that George was not to get married; that George performed various services for decedent, took him to the bathroom, brought him water to drink, read the newspapers to him, and informed him of the outside news, and that George was not present at either conversation, but complainant was present at the conversation on January 25.

Complainant testified she was present at the conversation between decedent and her son, Henry, at her home on January 25; that decedent said George was to have the dwelling because he was good to him and did for him what he could, and because he liked George; that George should not get married and should be decedent's companion and help him as long as he lived; that at another time, on June 29, 1929, at which her son, Henry, was present, the same

conversation, in substance, took place; that after the will of December 13, 1930, was executed decedent would occasionally say he felt better in that he had done what he had promised to do, and that George was a companion to him and helped him.

Emma Snowey testified that on the day after St. Patrick's Day in 1927, decedent told her complainant was good to him and he would not forget her; that he wanted to leave her his property, and that George was good to him and he would not forget him.

Emma Boysen testified she visited decedent at the Holsz home on an average of once or twice a month and that he told her he wanted to make his home with Mrs. Holsz as long as he lived and that whatever he had should go to her because she deserved it and had done so much for him.

Maude Stone testified that in the spring of 1927 she went to the Holsz home to rent decedent's dwelling; that he would not rent it unless the witness would go there and take care of him and he asked her if she would do so. Mrs. Holsz denied that Mrs. Stone visited decedent at her home. Mrs. Stone testified that in August, 1932, decedent told her he had changed his mind and willed everything to Mrs. Stephen and that the other woman wouldn't get it.

At the close of the testimony of complainant and cross-complainant, appellee was allowed, over objection, to file amended answers, setting up the Statute of Frauds as a defense. Neither the bill nor the cross-bill disclosed whether the alleged agreement was oral or written. The fact that it was oral was not shown until it appeared from the testimony of the witnesses of complainant and cross-complainant. The statute permits amendments at any time before final judgment (Smith's Stat. 1935, chap. 110, par. 170; Smith's Stat. 1933, chap. 110, sec. 39,) and the court did not abuse its discretion in permitting the amendment.

It is claimed that decedent's will of December, 1930, constituted a sufficient note or memorandum within the

purview of the Statute of Frauds. The statute does not require that the contract itself shall be reduced to writing and no particular form is necessary. It is enough if it contains the names of the parties, the terms and conditions of the contract and a description of the property sufficient to render it capable of identification. (*Kohlbrecher* v. *Guettermann*, 329 Ill. 246; *Stein* v. *McKinney*, 313 id. 84.) But to satisfy the statute and to enable a party to enforce specific performance, the contract, or some note or memorandum thereof, must be complete in itself and cannot rest partly in writing and partly in parol. (*Kohlbrecher* v. *Guettermann, supra; Weber* v. *Adler*, 311 Ill. 547.) A deed executed in pursuance of an oral agreement, without any reference therein to the terms of the contract, is not a sufficient note or memorandum to take the transaction out of the terms of the statute. (*Nehrkorn* v. *Tissier*, 352 Ill. 181; *Volmut* v. *Bern*, 346 id. 619; *Johnson* v. *Wallden*, 342 id. 201.) A will falls in the same class as a deed. Kelly's will contains no intimation that it was executed in pursuance of any contract. Upon its face, it purports to be nothing more than a gift of the property mentioned in the bill and cross-bill, and therefore is not a sufficient note or memorandum within the terms of the statute.

It is contended that notwithstanding the Statute of Frauds, a court of equity will specifically enforce an oral agreement to bequeath and devise property in consideration of personal services, where the party seeking enforcement has performed his or her part of the agreement and cannot be adequately compensated at law. Whether the specific performance of a contract will be granted depends in a large measure on the facts in the case. Even where the terms of the contract are clear, certain and unambiguout, specific performance is not a matter of right but rests in the sound discretion of the court to be determined from all the facts and circumstances. (*Edwards* v. *Brown*, 308 Ill. 350.) The remedy is afforded where the contract has

been performed by one party in such a way that the parties cannot be placed in *statu quo* or damages awarded which would be full compensation. (*Weir* v. *Weir*, 287 Ill. 495; *Koenig* v. *Dohm*, 209 id. 468.) The performance relied upon must place the party who has performed in such a situation that it would be a fraud upon him if the agreement were not carried out. (*Nelson* v. *Nelson*, 334 Ill. 43.) To take an oral promise which has been partly performed out of the statute, part performance must be such that a restoration of their previous condition is impracticable and a refusal to go on and complete the engagement would be a virtual fraud upon the parties. (*Shaver* v. *Wickwire*, 335 Ill. 46; *Stephens* v. *Collison*, 313 id. 365.) The performance of personal services, the value of which may be estimated in money, or for which a recovery may be had at law, will not take the contract out of the statute, because the law affords an adequate remedy. It is only where the Statute of Limitations bars a recovery at law, or where the improvements made or services performed cannot be adequately compensated at law, or where failure to carry out the agreement will amount to a fraud on the promisee, that specific performance will be decreed. Where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied. *Fierke* v. *Elgin City Banking Co.* 359 Ill. 394; *Yager* v. *Lyon*, 337 id. 271; *Winans* v. *Bloomer*, 321 id. 76.

Complainant contends that her remedy at law is not adequate because a portion of her claim is barred by the Statute of Limitations as decedent died more than five years after the making of the alleged contract. The claim filed by her against decedent's estate is for $25,000. If, as the testimony tends to show, her services were worth from seventy-five to eighty dollars per week, her recovery in the probate court, after eliminating that portion of her claim barred by the statute, would be considerably more than the value of the property to which she claims she is entitled.

Her remedy at law is not shown to be inadequate, nor is she in any worse position than she was at the inception of her services to decedent.

Upon the whole record, it is apparent that the chancellor committed no error in dismissing the bill and the cross-bill for want of equity. The decree of the circuit court is accordingly affirmed. *Decree affirmed.*