Argued March 14, affirmed March 26, rehearing denied and decree modified June 25, respondent's petition for rehearing denied July 16, 1929.

GERTRUDE B. STERRETT *v.* T. M. HURLBURT, SHERIFF, ET AL.

(275 Pac. 689; 278 Pac. 986.)

For appellants there was a brief and oral argument by *Mr. George S. Shepherd.*

For respondent there was a brief over the names of *Mr. C. C. Hall* and *Mr. E. L. Wilson,* with an oral argument by *Mr. Hall.*

BROWN, J.— First addressing ourselves to a consideration of the complaint herein, we note that the sufficiency of that pleading is attacked in this court for the first time. However, under our system of judicial procedure, a defendant, by failing to raise this question either by demurrer or answer, waives neither his objection to the jurisdiction of the court nor that the complaint fails to state a cause of suit. See Or. L., § 72, and the local citations in notes fol-

lowing. But, when a complaint reaches this court without having been demurred to or moved against in any way, every reasonable inference is resolved in support thereof: *Dippold* v. *Cathlamet Lbr. Co.*, 98 Or. 183 (193 Pac. 909), and the Oregon cases there cited.

True, the complaint herein contains some defects. These defects, however, are not such as will render the pleading insufficient after trial and decree. This pleading plainly informs the defendants, and each of them, that Lot 1, Block 8, Merlow, is claimed by plaintiff to be her actual abode, and that she occupies the same as owner. It alleges the value of that property. It alleges facts that constitute every element requisite to the existence of a homestead right, as defined by Section 221, Or. L., reading:

"A homestead shall be exempt from sale on execution from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of $3,000, except as otherwise provided by law. The homestead must be the actual abode of and occupied by the owner, his or her spouse, parent or child, and such exemption shall not be impaired by temporary removal or absence with the intention to reoccupy the same as a homestead, not (nor) by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $3,000, while held, with the intention to procure another homestead therewith, for a period not exceeding one year."

It shows that the alleged homesteader complied with Section 224 of our Code, as amended by Chapter 68, General Laws of Oregon, 1921, prescribing the manner of setting aside a homestead, which section reads, in part, as follows:

"Whenever a levy shall be made upon a homestead, the owner thereof, his or her spouse, parent of (or) child, agent or attorney, may notify the officer making such levy, at any time before the sale thereof, that he claims a homestead in such lands, giving a description of the quantity of land claimed as a homestead and an estimate of the value thereof."

Defendants assert that the claim of homestead is deficient, in that the claimant did not allege that the sheriff had levied upon the property. There is no force in this contention. A homestead right cannot be defeated by sale of the property in obedience to an execution without levying thereon. Obviously, the homesteader may, at any time before the execution sale, give notice that he claims a homestead. On the question of sufficiency of the notice, we refer to 6 Bancroft's Code Practice & Remedies, Section 4786, where it is written:

"It has been held that the bringing of a proceeding against the officer to enjoin the sale, in which the claim of homestead is set up, and the causing of a summons to be served, is a sufficient notice of the homestead selection and claim."

Our practice is in harmony with this holding. There are a number of decisions laid down in our own reports on the subject of homestead rights; and it is there uniformly held that statutes exempting homesteads from forced sale on judicial process should be liberally construed so as to effect the purpose of the statute. See *Wilson* v. *Peterson,* 68 Or. 525 (136 Pac. 1187); *Watson* v. *Hurlburt,* 87 Or. 297 (170 Pac. 541); *De Haven & Son Hardware Co.* v. *Schultz,* 122 Or. 493 (259 Pac. 778).

■ The next point involves the sufficiency of the evidence to support plaintiff's claim of homestead.

The right of homestead is a statutory creation; and, to be entitled thereto, the claimant must bring himself within the provisions of the law reading:

"The homestead must be the actual abode of and occupied by the owner, his or her spouse, parent or child." Or. L., § 221.

Were this the sum total of the law with reference thereto, we would be constrained to hold with the defendants. But the statute says, "such exemption shall not be impaired by temporary removal or absence with the intention to reoccupy the same as a homestead."

Briefly summarized, the testimony shows that about the last of March, 1923, the plaintiff and her husband, a saw filer by trade, purchased the property in question on contract with one Elizabeth Viaene, and moved into the house situate thereon, occupying it continuously as their home for approximately 10 months. The property was of the reasonable value of $5,500, and was mortgaged for $2,500. At the expiration of the time stated, being in arrears in their payments and unable to meet their obligations they moved out, leaving in the house all of their furniture, canned goods, trunks, and part of their clothing. Plaintiff's husband was unable to secure work at his trade, but for nearly a year plaintiff, with another woman, operated a cafeteria "to make things go." This, however, netted but a bare living, and after a year's absence they returned to the homestead, where they again lived for approximately seven months. Plaintiff's husband again finding it impossible to secure employment, they went to California, where they both found work. At the time of the trial, plaintiff was "marcelling," and her husband was employed as head

filer at the Red River Lumber Company, Westwood, California. Upon being asked what her husband had done, if anything, to secure work in Portland since going to California, plaintiff testified:

"We returned here every year, and were in that house every year, and we would go over and take care of it; and while we stayed here he goes to Simonds Saw Company and all the saw companies, and every morning he was hoping something would come up while he was here."

She testified that she had purchased no real property since she had gone to California, and that the homestead had been leased from time to time during her absence. With respect to her claims in the property, she testified:

"The Court: Is it under lease now? A. By the month, because we are going to come back. That is our intentions in the early spring. We can't put the people out now as it is winter, and it is rented now just by the month.

"Q. Do you claim a homestead in the property at the present time? A. Yes.

"Q. Have you claimed a homestead in this property during all the times you have owned this property? A. Yes.

"Q. Has there been any time when you have ever abandoned your homestead right in this property? A. No, only temporarily on account of circumstances, is all.

"Q. Have you ever intended in any of your moves from your home to give up your rights that you may have in this property under the homestead law? A. No.

"Q. What is your plan in regard to moving back to Portland or not? * * A. It is our intention in the early spring to come back. * *

"Q. This property stands in your name only, does it not? A. Yes."

Plaintiff's testimony with relation to her intention to make her permanent home on the homestead is strongly corroborated by her witnesses. Mrs. Mildred Gallentine testified that she had known the plaintiff since about 1918; that she knew when plaintiff purchased the property involved; that she knew the plaintiff had resided in the house situate thereon and had occupied the same as her home for 10 or 11 months immediately following its purchase, during which time she saw the plaintiff every day; that she later went into business with the plaintiff, the two running a cafeteria together "from November until March." When questioned concerning plaintiff's financial condition during the first 10 months she and her husband occupied the home, she testified:

"Mr. Sterrett, when he moved into the home, had a good job at $20 a day, and had hopes of paying for his home, and at the end of three months, I believe it was the first of April, the Northern Pacific Lumber Company closed down and Mr. Sterrett lost his position, and at that time they had no money, they had been paying out just as fast as they received it, and therefore he had to leave because he didn't have the money to keep the place up."

On being asked to state whether she knew why the plaintiff moved from her home at the end of 10 months, she answered, "Yes, to try and make ends meet so that she could keep up her payments." This witness testified that after plaintiff went to California they corresponded continuously, and that she "absolutely" knew the plaintiff claimed that property as a homestead at all times. Asked to state how she knew, she testified:

"A. Because she had said at all times that she was coming back and could hardly wait for the time

for Mr. Sterrett to receive work here in Portland or around close, so that she could live in the home and he could make trips back and forth to his work by machine.

"Q. Do you know whether or not Mrs. Sterrett left any of her household effects or personal effects in this house during her absence? A. Yes, she has left all her household effects, her trunk, her canned fruit, and quite a few eatables.

"Q. Did she leave some of her clothes there? A. Yes."

Mrs. Elizabeth Viaene, hereinbefore referred to as the owner of the legal title to the property, testified that she was acquainted with the plaintiff; that plaintiff lived in the home the first 10 months after its purchase, and that she claimed the property as her home. In brief, the testimony of this witness corroborated that of plaintiff in so far as it related to the purchase of the home and plaintiff's intentions with respect thereto.

The question of abandonment and permanent removal from homestead has been the subject of much litigation, and much has been written in the books concerning it. Perhaps one of the most valuable and instructive treatises on the question is set out in Waples, Homestead and Exemption, at pp. 561, 562, 563, where the author says:

"It is settled as a rule of law that domicile continues till it is left without design of returning to it. It continues until it is succeeded by another. * * Permanent removal from the state is abandonment, whether a new homestead be established in the place to which the emigrant goes or not.

"The occupancy required is not slaving; it admits of absences from time to time by the head of the family and all of its members; it is in compliance with the law if there is an intention to return on the part

of the beneficiary, and if there has been no establishment of a home elsewhere. * *

"The period of absence is to be considered in determining the intention of the absentee, whether he meant to return or to abandon his habitation. Although the absence may extend through several months or years, with only partial occupancy, the intention to return may have continued all the while to the preservation of the exemption right. It may be perfectly consistent with the legal occupancy required, and may not work for forfeiture of the homestead. * *

"The time of absence, with intent to return to the home, is no criterion as to whether the exemption right has been forfeited."

For an illuminating discussion relating to temporary absence or removal from homestead, see *De Haven & Son Hardware Co.* v. *Schultz, supra,* and the authorities there cited.

From a careful analysis of the complaint in this case, we are satisfied that it is amply sufficient. Moreover, we are fully convinced that, under our Code, the plaintiff is entitled to her homestead right, and to a decree enjoining the sale of Lot 1, Block 8, Merlow, City of Portland.

The decision of the lower court is equitable and just. We therefore direct its affirmance.

AFFIRMED.

BEAN, BELT and McBRIDE, JJ., concur.

Rehearing denied and former opinion modified June 25, 1929.

## On Petition for Rehearing.

(278 Pac. 986.)

For the petition, *Mr. George S. Shepherd.*

*Contra, Messrs. Hall & Lepper* and *E. L. Wilson.*

BELT, J.—In the main we are satisfied with the conclusion reached in this case, but think it was error to affirm the decree of the lower court without modification, since it was there decreed "that defendants and each of them be permanently enjoined from at any time in the future attempting to cause execution to issue on said judgment."

Counsel well contends that the defendants should not be deprived of the statutory right to levy on the property in question whenever the homestead is abandoned or relinquished. The decree will be modified so as to enjoin defendants from having execution issue until such time as the homestead is abandoned or relinquished. Neither party will recover costs or disbursements. It is not deemed necessary to order a rehearing thus to modify the decree.

REHEARING DENIED. MODIFIED. RESPONDENT'S PETITION FOR REHEARING DENIED.

COSHOW, C. J., and BEAN, J., concur.

BROWN, J., absent.