Argued November 1, affirmed December 7, 1960, petition for
rehearing denied February 7, 1961

# NYGORD *v.* BAKER DISTRIBUTION YARD

357 P. 2d 270

*Harold Banta,* Baker, argued the cause for appellant. On the briefs were Banta, Silven, Horton & Young, Baker.

*Austin Dunn,* Baker, argued the cause and filed a brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and King, Justices.

KING, J. (Pro Tempore)

This is a suit by the trustee of a bankrupt estate, against the defendant, asking that a conveyance of personal property within four months of the filing of the petition in bankruptcy be declared void.

Farris O. Shannon and Anna V. Shannon, his wife, were the owners of a small "stud mill" in Baker, Oregon, known as the Shannon Lumber Company.

On June 10, 1952, the Shannons executed a chattel mortgage and demand note to the Baker Distribution Yard, a corporation, on all their mill equipment and machinery to secure a loan as made to them in the amount of $10,972.78.

On the same date the Shannons signed a letter to the defendant authorizing it to act as their exclusive agent in the sale of all the lumber output from the Shannon mill. This letter, in addition to providing for sales commissions to the defendant, provided the payment of $8.50 per thousand feet to Baker Wood Products for surfacing and loading the Shannon lumber. The Shannon mill had no planing or surfacing facilities or machinery, and the lumber was not readily salable until surfaced on all four sides. The letter also provided for the application of $3 per thousand for all lumber sold, on the note and mortgage. It was further provided that $3 per thousand of the selling price should be prorated among the following four creditors of the Shannon Lumber Company: (1) Timms Machine Shop, (2) Stewart Electric, (3) Oregon Lumber Retail, and (4) Basche-Sage Hdw. Co.

It appears that the financial affairs of the Shannon Lumber Company did not improve during the next year; in fact, they deteriorated to the extent that on August 5, 1953, the defendants had advanced over $17,000 additional credits, and there was a total amount

of approximately $28,000 due the defendants from the Shannon Lumber Company operations.

On August 5, 1953, Farris O. Shannon and Anna V. Shannon, at the insistence of defendant's representative, Mr. W. D. Hostetler, made, executed and delivered a bill of sale to the defendant of all the machinery and equipment covered by the chattel mortgage, and in addition thereto, 188,220 feet of lumber and ties located at the mill, 56,320 feet of ½ planed 2″ x 4″ located at Oregon Lumber Co., and 14,664 feet of lumber located at Boxyard, together with approximately 138,160 feet of logs on the mill site and in the pond.

The bill of sale included the following clause:

"And we hereby covenant with the said party of second part that we are the lawful owners of said goods and chattels; that they are free from all encumbrances, excepting only a chattel mortgage held by the second party upon the equipment and subject to any and [all] claims assertable under Bulk Sales Law or General Laws of the State of Oregon, as of this date."

Petitions in bankruptcy were filed against the Shannons by certain of their creditors on December 4, 1953, within four months of the bill of sale to the defendant.

The complaint alleges in effect that the bill of sale was given to hinder, delay and defraud creditors and to give the Baker Distribution Yard a preference, and asks that it be declared void and for an accounting.

The defendant admits that it had reasonable cause to believe that the Shannons were insolvent but deny any attempt to defraud or that its acts constituted any preference. The defendant claims that its chattel mortgage is valid and bona fide; that the bill of sale of

other property was taken in order to finish the products for better sale; and after satisfying the preference claims, the balance was to be prorated without any preference to its own unsecured claims. This was denied by the reply.

By admissions made in the pleadings, at the trial, and in the briefs, the real question to be determined was whether the transfer of the lumber and logs by the bill of sale resulted in the defendant receiving a preference or greater percentage of its debt than received by the other creditors of the same class. It is almost entirely a question of fact. See 4 Remington on Bankruptcy 316, § 1701, Who are creditors "of the same class."; USCA, Title II, Bankruptcy, 608, § 96, Preferred creditors.

The trial court made a determination of the receipts and expenses of the defendant in the finishing and sale of the lumber and logs involved and found that there was a balance due the plaintiff from the defendant in the amount of $3,873.60 and entered a decree and judgment for that amount.

■ This being an equity case, it is, of course, tried anew by this court; however, considerable weight is given the trial court's findings, accounting and decree, especially where witnesses for the same party give conflicting testimony, as will be later pointed out. ORS 17.440.

An equity case is tried de novo on appeal. *Stevens v. Myers,* 91 Or 114, 177 P 37, 2 ALR 1155; *Lowell et al. v. Pendleton Auto Co.,* 123 Or 383, 261 P 415; *Hunter v. Hunter,* 207 Or 219, 295 P2d 195; *Cole v. Fogel et al.,* 210 Or 257, 310 P2d 315.

The defendant's first assignment of error was:

"The Court erred in failing to allow credit for the Galligan stumpage payment."

This payment was in the amount of $1,697.99 and was made by the defendant to Mr. Galligan by check dated July 21, 1953, for stumpage on logs taken from Mr. Galligan's premises during July, 1953.

■ This payment made before the bill of sale was made by the Shannons to defendant on August 5, 1953, was in the same status as other advances made by the defendant and undoubtedly was and should have been included in their total claimed account of $28,000. It was not included in the statement of defendant's accountant, Mr. Pattullo, received in evidence.

Mr. Lilley, president of defendant corporation, testified regarding the Galligan account as follows:

"* * * If we owed him for logs, we paid him, that's a cinch, but the Galligan logs that Shannon bought I understood went out to Pondosa and Shannon collected $5,000 the day before he left the country and didn't pay for the logs. Now that was the information that I had."

This statement was later modified somewhat; but there is no proof that the Galligan logs came to the Shannon pond, or that Mr. Galligan would have had a lien on any of the material set forth in the bill of sale. The assignment of error is denied.

■ Defendant's assignment of error No. 2 refers to a claim of the State Industrial Accident Commission in the amount of $93.40 paid by the defendant on December 15, 1953. This was even after the date of the actual bankruptcy filing and was a lien against the machinery and equipment belonging to the defendant and covered by its mortgage and bill of sale. Whether it was a proper claim to file in the bankruptcy proceedings is not determined here. It was not a lien on the lumber or logs involved here, as it shows on its face.

Defendant's third assignment of error is without merit. The trial court did not omit credit for surfacing rough lumber, but merely divided it into two categories, surfacing the rough lumber on hand as of August 5, 1953, and included the surfacing of the balance in the milling costs of the logs on hand.

■ Defendant's assignment of error No. 4 likewise is without merit. The trial court merely used the cost price of the logs in the pond of $25 per thousand, as shown by defendant's own testimony. There was no reason for considering any further cost of reloading and delivering them to some other mill. They were cut at the Shannon mill, and loading and delivery costs of the lumber therefrom were properly taken care of in the court's figures.

Assignment of error No. 5 is simply a computation favorable to the defendant and based upon improper assumption of facts. For example, they assume cost of the logs in the pond to be $16 per thousand, when, as above pointed out, all the evidence showed they cost $25 per thousand both immediately before and immediately after the August 5, 1953, date of the bill of sale. This assignment is merely a summarization of amounts claimed in previous assignments and is without merit.

As mentioned before, the defendant admits it knew or had reasonable cause to believe that the Shannons were insolvent at the time the bill of sale was given August 5, 1953. They claim their real purpose was to salvage as much as possible from the lumber and logs for the benefit of their creditors, including itself, according to priorities.

■ In attempting to perform this service, it was incumbent upon the defendant to account carefully for all its costs, expenses and dealings with the lumber

and log inventory. This it failed to do. The testimony and statement of its accountant varied materially and was changed, modified and contradicted in many respects by its president and manager. There was no satisfactory segregation between the expenses charged to the operation on the logs and lumber of the inventory and other logs purchased and cut by the defendant.

It seems sawing of slightly over 100,000 feet of logs should have been accomplished in a very few days and without a complete overhauling of the mill, even though the costs were later very roughly segregated. We will not prolong this decision by citing the numerous instances such as overhauling the Caterpillar, which was unreasonable to charge against this small operation.

■ Suffice it to say, the trial judge made a careful and detailed summation of the evidence in his trial opinion and found there was an amount due the trustee from the defendant corporation in the amount of $3,873.60.

We find no reason to change that amount.

Affirmed.