Argued February 2, reversed with instructions May 26, petition
for rehearing denied July 14, 1971

SCOGGINS, *Respondent, v.* STATE CON-
STRUCTION CORPORATION, *Appellant,* and
STATE CONSTRUCTION CORPORATION,
*Appellant, v.* SCOGGINS ET AL, *Respondents.*

485 P2d 391

372

In Banc

*Robert W. Redding,* Portland, argued the cause for appellant. With him on the brief were Black, Kendall, Tremaine, Boothe & Higgins, and David J. Krieger, Portland.

*James M. Hafey,* Portland, argued the cause for respondents. With him on the brief was Larry Landgraver, Portland.

DENECKE, J.

Mrs. Scoggins brought a suit in equity to set aside

a deed of property upon which her house was located. The deed was from the City of Portland to State Construction Corp. and was given because Construction Corp. purchased the property at a sale foreclosing the City's lien which secured a delinquent assessment for sidewalk construction.

In 1959 the City of Portland constructed a sidewalk upon the property of Mrs. Scoggins and her then husband. An assessment was made against the property and Mrs. Scoggins and her husband made several annual payments. Mrs. Scoggins was divorced in 1964; however, she remained upon the property. According to her testimony she thereafter received no notice of the annual installments and made no payments. The assessments became delinquent, the property was put up for sale, and was sold, all, according to Mrs. Scoggins' testimony, without any kind of notice to her.

In June 1965 the property was sold to State Construction Corp. for $225.44, the amount of the delinquency and the maximum which could be received by the City under ORS 223.525. The property is allegedly worth $10,000. In June 1968 the City delivered a deed to Construction Corp.

Mrs. Scoggins alleged in her complaint that she did not receive notice of the proceedings; that Construction Corp. would be unjustly enriched if it retained the property; and prayed for a decree that the deed to Construction Corp. be declared void. The trial court found for Mrs. Scoggins and Construction Corp. appeals.

The procedure is governed by ORS 223.505-223.595. The statutes provide for notice of sale to the delinquent owner, for public sale and a certificate of sale to the purchaser, and a one-year period of re-

demption which can be accomplished by paying the purchase price, interest and a penalty. If no redemption is had within the year, the City delivers a deed to the purchaser. ORS 223.575 provides:

"The effect of the deed shall be to convey to the grantee therein named the legal and equitable title in fee simple, to the real property described in the deed, excepting only the lien of the city on such assessments or liens as were not included in the foreclosure proceedings. The deed shall be prima facie evidence of title in the grantee, except as stated in this section, and that all proceedings and acts necessary to make such deed in all respects good and valid have been had and done. Such prima facie evidence shall not be disputed, overcome or rebutted, or the effect thereof avoided, except by satisfactory proof of either:

"(1) Fraud in making the assessment or in the assessment, or in the procuring of the lien.

"(2) Payment of the assessment or lien before sale or redemption after sale.

"(3) That payment or redemption was prevented by fraud of the purchaser.

"(4) That the property was sold for a lien or assessment for which neither the property nor its owner, at the time of sale, was liable, and that no part of the assessment or lien was assessed or levied upon the property sold."

This statute provides in essence that the deed is prima facie evidence that all notices required by statute, such as notice of foreclosure, sale, etc., have been given. The act also provides that this prima facie evidence cannot be disputed except for the four grounds set out in the statute.

At trial Construction Corp., in essence, introduced its deed from the City and rested. Since ade-

quacy of notice is not in issue under the statute, Construction Corp. did not attempt to put in any evidence of what notice the City had given Mrs. Scoggins. Mrs. Scoggins testified that she had not received any notice of actions taken by the City. Mrs. Scoggins did not claim at trial or in this court that the failure to give notice deprived her of her property without due process of law.

The trial court reasoned that Construction Corp. knew or should have known that Mrs. Scoggins would not have suffered her $10,000 house to be forfeited to pay $225 unless she was unaware of what was happening. For this reason the trial court was of the opinion that Construction Corp. had a duty to inform Mrs. Scoggins of the facts and its failure to do so constituted fraud within the meaning of the above-quoted statute and, therefore, the prima facie case made by the deed had been successfully rebutted.

1, 2. The trial court was in error for two reasons: First, fraud was not pleaded nor made an issue in the trial court or this court. Second, there is no evidence of fraud. A trial or appellate court sitting as a court of equity is not free to disregard clear statutory requirements regardless of the apparent injustice of the result. *Evans Products v. Jorgensen*, 245 Or 362, 372, 421 P2d 978 (1966).

Mrs. Scoggins alleged in her complaint that the City published notice of the sale in the Daily Journal of Commerce, a newspaper; however, Mrs. Scoggins was not apprised of the sale. She further alleged: "The defendant has been unjustly enriched in the approximate amount of $9,700.00 at the expense of plaintiff, who had no notice of the proceedings nor the opportunity to pay the lien."

3, 4. Fraud is only one of many grounds for claiming that the other party was unjustly enriched. Restatement, Restitution, Table of Contents. The purpose of pleadings is to inform the parties of the issues. A pleading of unjust enrichment without pleading the alleged ground such as mistake, coercion, undue influence, or fraud does not adequately inform.

Even more important, in the trial court Mrs. Scoggins did not claim fraud. In oral argument in this court counsel was explicit in stating that he was not contending that she was entitled to relief upon any of the statutory grounds, including fraud. He stated that the reason he had gone into equity was to seek avoidance of the unjust result that the application of the statute would bring about. With fraud not being made an issue in the trial court, Construction Corp. would be prejudiced if we now considered the issue. At trial Construction Corp.'s attorney stated that he had checked the record and as far as he could see the City had given notice to Mrs. Scoggins in accordance with the statute; however, Mrs. Scoggins' contentions and the posture of the case in the trial court made that issue irrelevant.

Even if fraud, as that term is used in the statute, were in issue, there is no evidence of fraud.

5. In lieu of any evidence to the contrary, we must assume that the legislature was using "fraud" in its customary legal sense. "Fraud" in its customary legal sense does not encompass the failure of one in Construction Corp.'s position to notify one in Mrs. Scoggins' position that she must pay $225 within a certain period or lose her home.

6. A failure to disclose facts can be fraud; however, such a failure amounts to fraud only where there is a

duty to disclose. The Comment to Restatement, Restitution § 8, p 33, states: "Except in a few special types of transactions, such as insurance contracts and transactions between a fiduciary and his beneficiary, there is no general duty upon a party to a transaction to disclose facts to the other party. * * * [However], a person who, before the transaction is completed, knows or suspects that the other is acting under a misapprehension which, if the mistake were mutual, would cause the transaction to be voidable, is under a duty to disclose the facts to the others."

Comment b. to § 472, 2 Restatement, Contracts, pp 897-898, provides:

"A party entering into a bargain is not bound to tell everything he knows to the other party, even if he is aware that the other is ignorant of the facts; and unilateral mistake, of itself, does not make a transaction voidable (see § 503). But if a fact known by one party and not the other is so vital that if the mistake were mutual the contract would be voidable, and the party knowing the fact also knows that the other does not know it, non-disclosure is not privileged and is fraudulent."

Both of these sections concern a nondisclosure by one party to a bargain or transaction to the other party. Mrs. Scoggins and Construction Corp. were strangers and had no dealings with one another.

In a lengthy dissection of the subject W. Page Keeton outlines the instances in which a third party, not a party to the transaction, should have or has a duty to disclose. 15 Tex L Rev 1, 7-11 (1936). None of these instances are comparable to the present case.

In most, if not all cases of fraud, one essential element is some sort of reliance by the party claiming to be defrauded; reliance upon a misrepresentation

of the other party, whether that misrepresentation be an affirmative one or by a nondisclosure. Here, Mrs. Scoggins did not and could not in any way rely upon any thing Construction Corp. did or omitted doing.

Reversed with instructions to dismiss Mrs. Scoggins' suit and to enter a judgment for State Construction Corp. granting it possession of the premises.

BRYSON, J., dissenting.

I am unable to agree with the majority opinion and feel that it reaches a most unconscionable result.

This is a consolidated appeal of two cases. The majority opinion disposes only of the equity suit and grants possession of plaintiff's property to defendant corporation. It does not dispose of the law action appealed, and it would follow that the defendant corporation would also have judgment in its law action against Patricia Scoggins and David Penney for $2,325.00.

*State Construction Corporation v. Scoggins and Penney* is an action at law to gain possession of certain residential property situated in Multnomah county, Oregon. The defendant Scoggins was former owner of the property and Penney was living in the premises. State Construction purchased the property at an improvement lien foreclosure sale conducted by the city of Portland and claims title thereto under a deed issued by the city. State Construction also seeks damages in the amount of $2,325, the rental value of the property during the period it was allegedly wrongfully withheld by the defendants.

*Scoggins v. State Construction Corporation* is a suit in equity brought by Patricia Scoggins, a defendant in State Construction's law action, to have State

Construction's deed to the property declared null and void and to have plaintiff declared the owner of the property. State Construction's answer admitted certain facts alleged in the complaint not at issue in the case and generally denied all other allegations.

The two cases were consolidated for trial in the sense that they were to be tried together, although each case remained distinct, and separate dispositions were made of each. The parties stipulated that the suit in equity would be tried first. At the conclusion of the trial, the trial court found that State Construction had fraudulently prevented Scoggins's redemption of the property sold at the foreclosure sale. The trial court decreed that a constructive trust be imposed upon the property in favor of Scoggins, and that State Construction's deed thereto be annulled, pursuant to ORS 223.575 (3)①, upon payment by Scoggins to State Construction of all sums which would have been due had the property been redeemed. As the decision

---

① ORS 223.575 "Legal and evidentiary effect of deed. The effect of the deed shall be to convey to the grantee therein named the legal and equitable title in fee simple, to the real property described in the deed, excepting only the lien of the city on such assessments or liens as were not included in the foreclosure proceedings. The deed shall be prima facie evidence of title in the grantee, except as stated in this section, and that all proceedings and acts necessary to make such deed in all respects good and valid have been had and done. Such prima facie evidence shall not be disputed, overcome or rebutted, or the effect thereof avoided, except by satisfactory proof of either:

"(1) Fraud in making the assessment or in the assessment, or in the procuring of the lien.

"(2) Payment of the assessment or lien before sale or redemption after sale.

"(3) That payment or redemption was prevented by fraud of the purchaser.

"(4) That the property was sold for a lien or assessment for which neither the property nor its owner, at the time of sale, was liable, and that no part of the assessment or lien was assessed or levied upon the property sold."

reached in the equity suit disposed of the action at law, the trial court further ordered that judgment be entered in favor of defendants in State Construction's law action. State Construction appeals both the decree and the judgment. As the outcome of this appeal will turn on the correctness of the decree rendered in the suit in equity, they will hereafter be referred to as they appeared in that suit; that is, Scoggins as plaintiff and State Construction as defendant.

Defendant contends that the decree must be vacated in that the suit is barred by the running of the period of limitation contained in ORS 223.585[2], as well as by laches, and that the complaint fails to allege any of the four statutory grounds for relief contained in ORS 223.575[3]. These contentions must be disposed of before the correctness of the decree is considered on the merits.

Defendant's first contention is not well taken. The period of limitation prescribed in ORS 223.585 could be properly raised as a defense to plaintiff's suit, but the defense does not rise *sua sponte*; it is an affirmative defense which must be pleaded in the answer if, as here, the lapse of time does not appear on the face of the complaint. *Hewitt v. Thomas et al*, 210 Or 273, 310 P2d 313 (1957). *See also* 1 Bancroft, *Code*

---

[2] ORS 223.585 "Time limitation on actions to recover sold property. Every action, suit or proceeding which may be commenced for the recovery of land sold by the treasurer for any assessment or lien or to quiet the title of the former owner, or his successors in interest, against such sale, or to set aside such sale, or to remove the cloud thereof, except in cases where the assessment or lien for which the land has been sold was paid before the sale, or the land redeemed as provided by law, shall be commenced within one year from the time of recording the deed executed under ORS 223.570."

[3] *See* note 1 *supra*.

*Pleading* §§ 329, 330, at 485-87. Since the period of limitation was not affirmatively pleaded by the defendant nor otherwise properly brought to the trial court's attention, the defense cannot be considered by this court when raised for the first time on appeal.

The defendant also contends that one seeking equitable relief after the running of the period of limitation must plead and prove the absence of laches, citing as authority for the proposition, *Corvallis Sand & Gravel v. Land Board,* 250 Or 319, 439 P2d 575 (1968), and *McIver v. Norman,* 187 Or 516, 205 P2d 137, *aff'd on rehearing* 213 P2d 144 (1949). Neither case so holds. Rather, they refer merely to earlier cases affirming the rule that when a complaint in equity shows on its face that the suit is brought after the legal period of limitation has run and the running of the period is raised by a demurrer, then the plaintiff must plead and prove the absence of laches. In this case, defendant could not raise the running of the period of limitation by demurrer because the running of the period did not appear on the face of the complaint. ORS 16.260. Furthermore, the defendant did not affirmatively plead the defense in its answer. Therefore, the contention that plaintiff must plead and prove the absence of laches is without merit.

Defendant's third contention is that the decree must be vacated in that the plaintiff failed to allege any of the four grounds for relief prescribed in ORS 223.575. As noted earlier, the trial court decreed that defendant's deed be annulled, being of the opinion that grounds for annulment had been proven under ORS 223.575 (3). Defendant's contention is not that sufficient ground for such relief has not been *proven* but that the ground itself has not been *pleaded.*

In construing a pleading for the purpose of determining its effect, its allegations are to be liberally construed with a view to doing substantial justice between the parties. ORS 16.120. This is especially true when, as here, a challenge to the sufficiency of a complaint is made for the first time on appeal. No objection to a complaint's sufficiency need be taken by answer or demurrer below in order to preserve the issue for appeal. ORS 16.330 and 16.340. Nevertheless, when a complaint reaches this court without having been demurred to or moved against, this court will indulge every reasonable inference from the allegations thereof to support it. *Sterrett v. Hurlburt et al*, 129 Or 520, 275 P 689, *decree modified and rehearing denied* 278 P 986 (1929). *See also* Justice McBRIDE's specially concurring opinion in *State ex rel. Carson v. Kozer*, 105 Or 509, 210 P 172 (1922); 1 Bancroft, *supra*, § 741, at 1043-044, and authorities there cited.

Thus, by liberally construing the complaint, it is found to allege that plaintiff is fee simple owner of the property to which defendant claims title; that the city of Portland had a bonded lien against that property and that plaintiff's payments against the lien's balance became delinquent; that the delinquent payments were because of the city's failure to notify plaintiff that the payments were due; that since the payments were in arrears, the city undertook to sell the property to recover the balance of the lien; that, prior to the sale, the only notice given to plaintiff that her property was to be sold was an advertisement in the Daily Journal of Commerce, a local newspaper which the plaintiff did not read; that, unknown to the plaintiff, her property, valued at approximately $10,000, was subsequently sold to defendant for $225.44. Under the rule in *Sterrett*, the complaint alleges that

subsequent to the sale and prior to the time the city issued defendant's deed to the property, neither the city nor the defendant gave plaintiff cause to believe that her property had been sold; lack of notice of the sale denied plaintiff the opportunity to exercise her right of redemption.

Plaintiff also alleges that, as a result, "the defendant has been unjustly enriched in the approximate amount of $9,700.00 at the expense of plaintiff."

The complaint leaves much to be desired. However, it is sufficient to establish grounds for relief under ORS 223.575 (3). An allegation of fraud may be reasonably inferred from the allegation of unjust enrichment, since the authorities agree that unjust enrichment implies the presence of fraud, actual or constructive. *See*, e.g., 2 F. Lawrence, *Equity Jurisprudence*, § 724, at 809-10. Whether proof of the allegation is sufficient to warrant relief under ORS 223.575 (3) remains to be seen. Suffice to say at this point that the elements of a cause of action under ORS 223.575 (3) have been pleaded. While plaintiff's allegations may be conclusory, any such defect is cured by defendant's failure to object and by proceeding to trial on the merits, and by the taking of evidence in support of pleaded conclusions. *Rayburn et ux. v. Crawford et ux.*, 187 Or 386, 394, 211 P2d 483 (1949) ; *Benson v. Williams*, 174 Or 404, 143 P2d 477, *decided on the merits* 149 P2d 549 (1944). *See* 71 CJS 1173-176, *Pleading* §§ 591, 592.

In considering this case on its merits, we are required not only to conduct a *de novo* review of the record before us, ORS 19.125 (3), but to determine on the basis of that review whether the challenged decree is just. *Sterrett v. Hurlburt, supra*, 129 Or at 528,

275 P at 691. *Also see* "Appellate Practice and Advocacy," 34 Or L Rev 73, 77, by the late Justice Rossman.

In December 1951, plaintiff was married to one Verle Penney. Some time later the residential property in southeast Portland was purchased and became the subject of this suit. In 1964 plaintiff divorced Mr. Penney, and he left the premises. Plaintiff continued to reside there until June 1968, when she remarried and moved to her present husband's residence in another section of Portland. Plaintiff alleges, and defendant admits, that plaintiff was the owner of the premises involved.

In 1959, the city of Portland constructed a sidewalk on or near the Penney residence and an assessment was made against their property. The Penneys were duly notified and upon written application elected to pay the assessment, or more accurately the lien in favor of the city, in installments as provided in the Bancroft Bonding Act, ORS 223.205 to 223.300. The Act charges the city's treasurer with the responsibility of notifying property owners when their annual installment payments are due. Several of these notices were received by the Penneys, whereupon they made the required payments until some time after 1964.

The difficulties which culminated in this lawsuit began between the time of the Penneys' divorce in 1964 and the time plaintiff left the premises in 1968. During that time, plaintiff received no notice from the city that an installment payment was due, and plaintiff made no payments. Thus, plaintiff's property was entered on the city's list of delinquencies and became subject to sale forthwith in order that the city might collect the unpaid balance of the lien.

There is no evidence that the city complied with the statutory provisions for notice to delinquent property owners prior to the sale of plaintiff's property. The notice requirements are set forth in ORS 223.520, which provides that upon receipt of the list of delinquencies by the city's treasurer,

"* * * the treasurer shall proceed to collect the unpaid liens or assessments named in the list by advertising and selling the lots or tracts in the manner now provided by law for the sale of real property on execution, * * *."

The notice provisions for the sale of real property on execution are contained in ORS 23.450:

"Before the sale of property on execution, notice thereof shall be given as follows:

"* * * * *

"(2) In case of real property, by publishing a similar notice [i.e., written or printed notice of the time and place of sale], particularly describing the property, once a week for four successive weeks, making four publishings in all, with the last publication at least one week prior to the day of sale, in a newspaper of the county, * * * *and* by sending forthwith upon the making of the first of such publishings, a copy of such notice by *registered mail* to the judgment debtor at his last known post-office address or place of residence." (Emphasis supplied.)

The evidence in this case establishes that plaintiff was not notified of the pending sale by registered mail. The only notice was that which appeared in the Daily Journal of Commerce in May and June of 1965, a local newspaper which the plaintiff does not read. The city's noncompliance with the clear terms of the notice statutes resulted in plaintiff's ignorance of the sale. On June 25, 1965, plaintiff's property, valued at

$10,000, was sold to the defendant for $225.44. On June 25, 1968, the city deeded the property to the defendant. The deed was recorded July 5, 1968. The evidence further discloses that plaintiff was completely unaware of what had transpired until the defendant filed its action at law to gain possession of the premises:

> "Q [Plaintiff's counsel] When did you first learn that this property had been sold for some two hundred dollars?
>
> "A [Plaintiff] When I got home from work one afternoon, my son said that a gentleman had been to the house and said that he owned it and for me to get my furniture and get out and that's the first I had heard and he had left a card for me to call.
>
> "Q Did you contact the City then at that time?
> "A I contacted the man first.
>
> "Q Who was this man?
> "A Mr. Mazzocco. [Representing State Construction Corporation]
>
> "Q After contacting Mr. Mazzocco, did you then contact the City?
> "A I called; I didn't really know who to call. I didn't know for sure what it was all about. I called the tax bureau downtown and they says, 'Well, as far as we can see, the taxes are still in your name.'"

No issue has been raised as to the effect of the defective notice of sale on the defendant's deed to the property. Therefore, ORS 223.575 is clear that once defendant's deed issued, the defect in the notice of sale was cured. I am concerned here with the conduct of the defendant during the running of the period of redemption.

First, it appears that the defendant is exper-

ienced in purchasing property at lien foreclosure sales and that it made no effort to contact the plaintiff before the period of redemption had run. Mr. Mazzocco, who represented the defendant at trial, testified as follows:

"BY THE COURT:

"Q Between this June '65 date and June '68 date, did you ever go near the property, Mr. Mazzocco?

"A We drive by the property before we buy it. We drive by the property during the course of the time * * * We buy these every month, Your Honor."

Mr. Mazzocco also testified to the renting of four houses, one hundred apartments, a half-dozen commercial properties, and to the operating of a motel. His considerable experience as a property manager qualified him to testify that the rental value of the property involved was $125 per month. It is inconceivable that the defendant was unaware of the true value of plaintiff's property when it was purchased at the sale. This alone establishes that no one in the financial condition of this plaintiff would virtually forfeit property worth $10,000 for nonpayment of $225.44 unless she was ignorant of the pending loss. This explains the defendant's failure to contact the plaintiff during the running of the redemption period. In fact, the evidence is that during the four years between June 25, 1965, the date the property was sold, and August 13, 1969, the date defendant filed its action to gain possession thereof, defendant deliberately avoided any contact with the plaintiff whatsoever. His purpose was clear enough: he wished her ignorance of the transaction to continue until the redemption period had run.

In *Teachers' Ret. Fund Ass'n. v. Pirie*, 150 Or 435,

445, 46 P2d 105, 109 (1935), this court stated, speaking through Justice HENRY J. BEAN,

> "Courts which have a true conception of the philosophy of equity constantly reiterate the fact that equity meets all conditions; that human ingenuity and human affairs can not create a condition which the long arm of the court of equity can not reach if injustice or wrong would otherwise result."

The trial court sitting in equity based its opinion on this concept, as evidenced by the memorandum opinion and decree. As part of the relief afforded the plaintiff, the court below imposed a constructive trust in plaintiff's favor upon the property which the defendant had wrongfully acquired and found that the defendant had been unjustly enriched at the plaintiff's expense.

> "* * * A constructive trust is simply a remedial institution invented by equity to avoid unjust enrichment in situations where there is no other available equitable remedy * * *. A constructive trust may be imposed upon the grantee as a remedial device to avoid unjust enrichment." *Belton v. Buesing*, 240 Or 405, 409.

Presumably, the decree by the trial court imposing a constructive trust in favor of plaintiff and the nullification of defendant's deed was predicated on the trial court's finding that the defendant's conduct was fraudulent in fact. Although that finding is entitled to great weight, *Nygord v. Baker Distribution Yard*, 226 Or 63, 357 P2d 270 (1961), I would affirm on different grounds.

It is a well-settled equitable principle that there need be no finding of actual fraud or fraud in fact precedent to the imposition of a constructive trust.

This remedy is appropriate whenever it appears that one has employed unconscientious conduct to acquire a legal interest in property which he ought not retain. *Suitter v. Thompson et ux*, 225 Or 614, 358 P2d 267 (1961) ; 4 Pomeroy, *Equity Jurisprudence* (5th ed) 93-97, 119 §§ 1044, 1053. *See Suitter v. Thompson, supra*, at 625, citing 4 Pomeroy's Equity Jurisprudence:

> "\* \* \* 'and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right \* \* \*.' "

Such unconscientious conduct may amount to actual fraud, but if it does not, the receipt and retention of unmerited benefits is clear nonetheless.

Thus, equity will consider such conduct to be constructive fraud, and will impose a constructive trust on the property wrongfully acquired in order to prevent unjust enrichment of the wrongdoer. 3 Pomeroy, *Equity Jurisprudence* (5th ed) n 1 at 625, § 992; *Suitter v. Thompson, supra*; *Belton v. Buesing, supra*; 37 CJS 211-12, *Fraud* § 2. *See also*, 3 Pomeroy, *Equity Jurisprudence* (5th ed) at 626, speaking of the three principal classes:

> "\* \* \* Constructive fraud is simply a term applied to a great variety of transactions, having little resemblance either in form or in nature, which equity regards as wrongful, to which it attributes the same or similar effects as those which follow from actual fraud, and for which it gives the same or similar relief as that granted in cases of real fraud. It covers different grades of wrong. It embraces contracts illegal, and therefore void at law as well as in equity; transactions voidable in equity because contrary to public policy; and transactions

which merely raise a presumption of wrong, *and throw upon the party benefited the burden of proving his innocence and the absence of fault.*" (Emphasis supplied.)

*See also* 3 Pomeroy, *Equity Jurisprudence* (5th ed) at 866:

"As a general rule, in the cases which come within this group, and, strictly speaking, none others should belong to it, the transaction is not fraudulent as to the immediate parties,—the grantor and the grantee, and the like; at least, neither of them is permitted, as against the other, to set aside the conveyance, or to defeat the enforcement of the contract if it be executory. The transaction is of such a nature that it defrauds or invades the rights of *third persons, who are not its immediate parties*; and they alone are, in general, entitled to impeach it and to obtain affirmative relief against it * * *." (Emphasis supplied.)

The plaintiff in this suit was a "third party" and had no contractual relationship with the defendant who has taken her property.

"* * * One is said to be unjustly enriched when he has received that which *'ex aequo et bono,'* 'in equity and good conscience,' 'upon principles of natural justice,' etc., he ought not to retain." 2 F. Lawrence, *Equity Jurisprudence* at 807.

Lawrence explains the rationale of this doctrine at page 808, as follows:

"* * * To the jurist unjust enrichment is not a moral or ethical notion, but a legal one with an economic justification. The protection of property and its enjoyment is a primary obligation of every civilized state * * *."

The provision in ORS 223.575 (3) for annulling a deed on proof that the purchaser prevented payment of the assessment or redemption through fraud, com-

prehends at least that kind of unconscientious conduct which has traditionally been the duty of equity to remedy. An obvious purpose of that subsection is to prevent unjust enrichment of purchasers at lien foreclosure sales, pursuant to such facts as appear in this case. When the conduct of a purchaser, such as defendant, during the period of redemption is such as would stir the conscience of equity, this imposes a constructive trust on the property in favor of the prior owner and provides ground for relief under ORS 223.575 (3).

I would affirm the decree and judgment entered in each case.

TONGUE, J., dissenting.

I join in the dissenting opinion of Mr. Justice BRYSON. I also question the constitutionality of a statutory procedure under which a homeowner can be deprived of his home without proof of actual notice of the proceedings under which his home was sold for failure to pay a delinquent assessment. See *Walker v. Hutchinson City,* 352 US 112, 116, 77 S Ct 200, 1 L ed 2d 178 (1956), and *Mullane v. Central Hanover Bank & Trust Co.,* 339 US 306, 70 S Ct 652, 94 L ed 865 (1950). Cf. *Hood River County v. Dabney,* 246 Or 14, 423 P2d 954 (1967). Thus, even though the question of constitutionality was not raised by plaintiff's counsel, it is of such importance that I would set this case for reargument upon that question.