Argued and submitted June 17, reversed December 30, 1981,
reconsideration denied March 11,
petition for review allowed April 20, 1982 (292 Or 863)
See later issue Oregon Reports

# FELONENKO,
*Respondent,*

*v.*

# SIOMKA,
*Appellant.*

## (No. A7901-00114, CA 18745)

637 P2d 1338

Guy A. Randles, Portland, argued the cause for appellant. With him on the briefs was Stoel, Rives, Boley, Fraser and Wyse, Portland.

James R. Cartwright, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARDEN, J.

## WARDEN, J.

Plaintiff brought this suit to rescind his conveyance of residential property to defendant, his niece. The trial court found that the conveyance resulted from defendant's fraud and set aside the deed. We reverse.

Plaintiff and defendant are from the Ukraine region of the Soviet Union. Plaintiff immigrated to this country in 1949 and settled in Detroit, Michigan. Defendant came to the United States in 1950, and also settled in Detroit. Plaintiff moved from Detroit to Oregon in 1957. Until the time of this suit, plaintiff and defendant had a close family relationship. In 1976, defendant came from Michigan to Oregon to help care for plaintiff's wife, who was ill with cancer. On April 23, 1977, plaintiff's wife died. Approximately one month after the funeral, plaintiff showed defendant his will, which made defendant his sole beneficiary.[1] The pertinent section reads as follows:

> "FIFTH: In the event that my wife's father should predecease my wife and I, or in the event that his death and my wife's and my death should occur simultaneously, or approximately so, in the same common accident, calamity, catastrophe, or epidemic, or under any circumstances causing doubt as to which of us survived the other, then it is my wish and desire and I hereby direct that all my real and personal property be sold and converted into cash and included into the rest and residue of my estate and be given unto my niece, ANNA G. SIOMKA, for her own use and benefit."

The provision for sale of the real property was contrary to what plaintiff had previously told defendant. He had said that it was his intention that the house itself be left to defendant. When defendant pointed this out to plaintiff, he said that the will should be changed. Defendant then took plaintiff to a mutual friend, Mrs. Warmsbecher, who had resolved a similar problem by deeding her house to her daughter, reserving a life estate. Security Escrow had drafted the deed. After discussing this solution with defendant and examining Mrs. Warmsbecher's deed, plaintiff indicated that he desired a similar arrangement.

---

[1] Plaintiff's father-in-law predeceased plaintiff's wife, leaving defendant as sole beneficiary.

Plaintiff and defendant then went to Security Escrow, where they twice met with escrow officers. At the end of the second meeting, plaintiff executed a deed conveying his residential property to defendant, reserving a life estate. Within a few days of the conveyance, plaintiff made defendant a joint owner of certain savings accounts; defendant's name was also placed on the title to plaintiff's car. Several days later, plaintiff received the deed from Security Escrow after it had been recorded and, without reading it, put the deed in a safe-deposit box.

Approximately ten months later, plaintiff had a market analysis done on his property and was informed that he would need defendant's signature to sell his house. Plaintiff contacted defendant and requested that she reconvey title to him. When she refused, plaintiff brought this suit for rescission, claiming that defendant fraudulently induced him to convey his property by her representation that the deed he signed was a will.

The trial court found that plaintiff had established the necessary elements of fraud and ordered the deed set aside. Defendant appeals from this order, contending that plaintiff failed to establish the elements of fraud by clear and convincing evidence. We review *de novo*.

In order to establish actionable fraud, the plaintiff must prove the following elements:

" '(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on its truth; (8) his right to rely thereon; and (9) his consequent and proximate injury. * * *' *Rice v. McAlister,* 268 Or 125, 128, 519 P2d 1263 (1974); *Conzelmann v. N. W. P. & D. Prod. Co.,* 190 Or 332, 225 P2d 757 (1950)." *Webb v. Clark,* 274 Or 387, 391, 546 P2d 1078 (1976).

If any one of these elements is not established by clear and convincing evidence, the case must fail. *Conzelmann v. N. W. P. & D. Prod. Co., supra.*

In the case at bar, the trial court found that defendant did not affirmatively represent to plaintiff that the deed he signed was a will. This finding is supported by

testimony of both plaintiff and defendant. The trial court did find, however, that defendant had made the requisite "representation" by *failing to disclose* to plaintiff that the document he signed was actually a deed and not a will.

■ Nondisclosure of material facts can be a form of misrepresentation, where the defendant has made representations which would be misleading without full disclosure. *Elizaga v. Kaiser Found. Hospitals,* 259 Or 542, 546, 487 P2d 870 (1971). However, failure to disclose such facts amounts to fraud only where there is a duty to disclose. *Scoggins v. State Construction,* 259 Or 371, 376- 377, 485 P2d 391 (1971).

■ Here, plaintiff relied on defendant to translate those parts of the escrow officers' conversations which he did not understand. That reliance, together with the fact that defendant was to be the grantee in the deed, created a confidential relationship between plaintiff and defendant. Because of that relationship, defendant had a duty to explain those aspects of the transaction that *she had reason to believe* plaintiff did not understand.

■ Defendant testified that the escrow officers explained the effect of the deed to plaintiff and that plaintiff understood he was signing a deed. Mrs. Warmsbecher testified that when plaintiff and she discussed a similar conveyance in plaintiff's native tongue, he understood that they were speaking of a deed. The escrow officer testified that the deed was thoroughly explained to plaintiff and that he understood its effect. The document itself had the words "Warranty Deed - Statutory Form" printed at the top. While not generally fluent in English, plaintiff testified that he could read the word "deed" and that he knew what it meant. Plaintiff admitted that he had previously sold two houses, a duplex and some unimproved property without the aid of an attorney. Each had involved a conveyance by deed. In sum, there is nothing in the record to indicate that defendant should have realized plaintiff was acting under a misapprehension when he signed the deed. Having no reason to believe that plaintiff thought he was signing a will, when, in fact, he was signing a document clearly identified as a deed, defendant was under no duty to disclose the mistake, if such it was, to plaintiff.

Because defendant had no duty to disclose to plaintiff that the document he was signing was a deed and not a will, we find that there was no "representation," and that the claim of fraud must fail. Restatement (Second) of Trusts § 2, Comment *b* (1959). Therefore, the judgment of the trial court which rescinded plaintiff's conveyance to defendant by deed dated June 7, 1977, is reversed.

Reversed.